IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF KANSAS

UNITED STATES OF AMERICA,

        Plaintiff,

v.                                      Case No. 25-10080-JWB

RUBEN FRANCO PERALTA,

        Defendant.

**MEMORANDUM AND ORDER**

This matter is before the court on Defendant's motion to suppress evidence. (Doc. 27.) The motion is fully briefed and ripe for decision. (Docs. 27, 33, 35.) The court held a hearing on December 16, 2025. The motion is DENIED for the reasons stated herein.

**I.  Facts**

On August 5, 2025, Defendant Ruben Franco Peralta was indicted on one count of possession of a firearm by an illegal alien in violation of 18 U.S.C. § 922(g)(5). (Doc. 1.) The following facts are taken from the testimony of the government's witnesses at the hearing held on December 16, 2025. On May 3, 2025, two Haskell County Sheriff's Deputies, Victor Mora and Joel Lathen, were dispatched to a U Pump It truck stop on Highway 83 in Haskell County, Kansas. There, two vehicles previously involved in an accident along Highway 83 had stopped. Upon the officers' arrival they discovered the two vehicles parked at the gas station.

A white pickup truck was parked in a stall, and another vehicle was parked behind it as if to prevent it from leaving. The white pickup truck belonged to Mr. Peralta. The other vehicle belonged to a man named Johnny Classen. Mr. Classen informed Deputy Lathen (the first to arrive on the scene) that he had been traveling northbound on Highway 83 when Mr. Peralta's pickup

1

truck, heading southbound, crossed the center line. Mr. Classen swerved to avoid it, but the two cars hit mirrors and both were damaged. Mr. Peralta did not stop his vehicle following the collision, so Mr. Classen followed him to the truck stop.

Deputy Lathen then engaged with Mr. Peralta. Mr. Peralta indicated that he did not speak English and could only communicate in Spanish. Deputy Mora arrived at the scene shortly thereafter. Deputy Mora speaks Spanish and was able to communicate with Mr. Peralta. Deputy Mora attempted to help Mr. Peralta locate his insurance and registration information. Deputy Mora escorted Mr. Peralta to his pickup truck where Mr. Peralta looked in both the front and rear passenger side doors. Mr. Peralta was unable to locate his insurance and registration information. Mr. Peralta was also unable to produce a driver's license.

During this interaction, Deputy Mora noticed an odor of alcohol coming from Mr. Peralta's person. Following this observation, Deputy Mora began investigating Mr. Peralta for driving under the influence ("DUI"). Deputy Mora performed field sobriety tests on Mr. Peralta. He performed three "standardized field sobriety tests": (1) a horizontal gaze nystagmus test; (2) a walk and turn test; and (3) a one-leg stand test. Mr. Peralta complied with Deputy Mora's instructions for these tests but his performance on all three indicated he was intoxicated. At this point, Deputy Mora performed a preliminary breath test using a portable breathalyzer unit. Mr. Peralta's breathalyzer reading was 0.197 which is almost two-and-a-half times the legal limit.

Deputies Mora and Lathen arrested Mr. Peralta for DUI. Mr. Peralta was placed in handcuffs and then seated in the back of Deputy Mora's patrol car. Mr. Peralta was then transported to the Haskell County Sherriff's Office. Deputy Lathen remained on scene and conducted a search of Mr. Peralta's truck. Deputy Lathen testified he was looking for evidence of the crime of DUI such as open containers, cans, or bottles. Under the front passenger seat Deputy

Lathen found an almost empty can of beer. In the back pocket of the passenger seat, Deputy Lathen found two more open containers and one unopened container of alcohol. Additionally, Deputy Lathen found a .22 caliber Ruger 1022 rifle, complete with a 25-round magazine, behind the driver's seat. Deputy Lathen entered the rifle into evidence at the sheriff's office.

When authorities determined that Mr. Peralta was illegally present in the United States, they concluded his possession of the rifle was a crime. A grand jury returned the aforementioned indictment. Mr. Peralta now moves to suppress evidence of the rifle as the product of an unlawful search and seizure in violation of his rights under the Fourth Amendment to the United States Constitution.

## II. Analysis

Mr. Peralta moves to suppress on the ground that the search of his vehicle was not a valid search incident to arrest. (Doc. 27 at 3-7.) The government responds, arguing that the search was a proper search incident to arrest and even if it was not, the officers acted in good faith and therefore the evidence should not be suppressed. (Doc. 33 at 3-11.) In his reply brief, Mr. Peralta contests each of the government's arguments. For the reasons discussed below, the court denies the motion to suppress because it finds that the search was a valid search incident to arrest.

### A. The Fourth Amendment

The Fourth Amendment to the United States Constitution reads: "The right of the people[1] to be secure in their persons, houses, papers, and effects, against unreasonable searches and seizures, shall not be violated, and no Warrants shall issue, but upon probable cause, supported by Oath or affirmation, and particularly describing the place to be searched, and the persons or things to be seized." U.S. Const. amend IV.  The Supreme Court has held that warrantless searches are "per se unreasonable."  *Katz v. United States*, 389 U.S. 347, 357 (1967).  That said, the "presumption may be overcome in some circumstances because 'the ultimate touchstone of the Fourth Amendment is reasonableness.'" *Kentucky v. King*, 563 U.S. 452, 459 (2011) (quoting *Brigham City v. Stuart*, 547 U.S. 398, 403 (2006)).

The Supreme Court has expended considerable effort defining the contours of an entire menu of exceptions to the warrant requirement.  *See e.g.*, *Carroll v. United States*, 267 U.S. 132 (1925) (automobile exception); *Chimel v. California*, 395 U.S. 752 (1969) (searches incident to arrest); *South Dakota v. Opperman*, 428 U.S. 364 (1976) (inventory searches); *Mincey v. Arizona*, 437 U.S. 385 (1978) (exigent circumstances); *New York v. Belton*, 453 U.S. 454 (1981) (searches incident to arrest as applied to automobiles); *New York v. Burger*, 482 U.S. 691 (1987) (administrative searches).

---

[1] Courts, including this one, have expressed skepticism that illegal aliens like Mr. Peralta fall within the scope of "the people" as expounded in the Supreme Court's Second Amendment jurisprudence. *See e.g.*, *United States v. Escobar-Temal*, No. 24-5668, 2025 WL 3632831 at *14 (6th Cir. Dec. 15, 2025) (Thapar, J., dissenting in part and concurring in the judgment) ("An illegal alien asserts the Second Amendment "right of the people" to bear arms, arguing that constitutional guarantees attach to noncitizens who have developed a personal connection to this country. Properly read, our text, history, and tradition squarely foreclose his claim. They reveal that "the people" refers to the citizens of the United States who consented to its government. Since illegal aliens are not citizens, they cannot lay claim to the right to bear arms reserved for 'We, the People.'").  The court notes here that the phrase "the people" appears in the Bill of Rights not just in the Second Amendment, but also the First, Fourth, and Ninth Amendments.  As Judge Thapar explained, illegal aliens are not part of "the people" as the phrase is used in the Constitution.  *See also United States v. Peralta*, No. 25-CR-10080, 2025 WL 3550779 at *2 (D. Kan. Dec. 11, 2025).  Given that the phraseology is the same, it would seem to follow that the Fourth Amendment, and other constitutional rights limited to "the people" would not apply to Mr. Peralta either.  Still, the Tenth Circuit has expressed that the question of the reach of the "the people" is a "challenging threshold question."  *United States v. Duque-Ramirez*, 161 F.4th 1237, 1245 (10th Cir. 2025).  Therefore, and because neither the government nor the defense disputes that notion the court proceeds assuming that the Fourth Amendment does apply to Mr. Peralta, despite the present contradiction.

At base, the search incident to arrest exception posits that (1) "it is reasonable for the arresting officer to search the person arrested in order to remove any weapons that the latter might seek to use in order to resist arrest or effect his escape"; and (2) "it is entirely reasonable for the arresting officer to search for and seize any evidence on the arrestee's person in order to prevent its concealment or destruction." *Chimel*, 395 U.S. at 763 ("And the area into which an arrestee might reach in order to grab a weapon or evidentiary items must, of course, be governed by a like rule. A gun on a table or in a drawer in front of one who is arrested can be as dangerous to the arresting officer as one concealed in the clothing of the person arrested. There is ample justification, therefore, for a search of the arrestee's person and the area 'within his immediate control'—construing that phrase to mean the area from within which he might gain possession of a weapon or destructible evidence.").

After *Chimel*, the search incident to arrest rule was routinely applied to traffic stops. *Belton*, 453 U.S. at 459. In *Belton*, the court authorized warrantless searches of the entirety of the passenger compartment of a vehicle when done as a contemporaneous incident of arrest. *Id.* at 460. *Belton* also authorized the search of any containers within the passenger compartment. *Id.* But in the years following *Belton*, constitutional creep ensued, and the *Belton* rule was used to justify searches "even if there is no possibility the arrestee could gain access to the vehicle at the time of search." *Arizona v. Gant*, 556 U.S. 332, 341 (2009). This understanding "untether[ed]" the *Belton* rule from its *Chimel* ancestor. *Id.* at 343. The search incident to arrest doctrine was, from its inception, understood as serving the state's interest in protecting the safety of police officers and preventing the destruction of evidence. *Chimel*, 395 U.S. at 763. Therefore, using that rationale to justify searches where the arrestee is secured "stretches it beyond its breaking

point." *Thornton v. United States*, 541 U.S. 615, 625 (2004) (Scalia, J., concurring in the judgment)).

In *Arizona v. Gant*, the Supreme Court expressly rejected that broad reading of *Belton* which permitted searches incident to arrest of a vehicle during "every arrest of a recent occupant notwithstanding that in most cases the vehicle's passenger compartment will not be within the arrestee's reach at the time of the search." *Gant*, 556 U.S. at 343. It held instead that police may "search a vehicle incident to a recent occupant's arrest only when the arrestee is unsecured and within reaching distance of the passenger compartment at the time of the search." *Id.* This rule prohibits the pre-*Gant* era searches that were permitted "even when ... the handcuffed arrestee has already left the scene." *Id.* (quoting *Thornton*, 541 U.S. at 628 (Scalia, J., concurring in the judgment)).

But the *Gant* court did not stop there. The court explained that "circumstances unique to the vehicle context" can justify another kind of search incident to arrest. *Id.* at 343. Justice Scalia had previously outlined this view in a concurrence in *Thornton v. United States*. 541 U.S. at 625. The *Gant* court explicitly referenced and incorporated Justice Scalia's concurrence into its majority opinion. A search incident to lawful arrest is also permissible "when it is 'reasonable to believe evidence relevant to the crime of arrest might be found in the vehicle.'" *Gant*, 556 U.S. at 343 (quoting *Thornton*, 541 U.S. at 625 (Scalia, J., concurring in the judgment)). The *Gant* court went on to say that "[i]n many cases, as when a recent occupant is arrested for a traffic violation, there will be no reasonable basis to believe the vehicle contains relevant evidence. But in others, including *Belton* and *Thornton*, the offense of arrest will supply a basis for searching the passenger compartment of an arrestee's vehicle and any containers therein." *Id.* at 343-44 (internal citations omitted). In doing so, the court articulated a standard, "reasonable belief," for searching

automobiles that requires less than probable cause. *Id.* at 347 (contrasting *Gant* with several other exceptions to the warrant requirement, including the broader probable cause automobile exception as outlined in *United States v. Ross*, 456 U.S. 798, 820-21 (1982)).

The *Gant* court concluded by expressly rejecting both possible rationales as justifying the search before it. *Id.* at 344 ("Because police could not reasonably have believed either that Gant could have accessed his car at the time of the search *or* that evidence of the offense for which he was arrested might have been found therein, the search in this case was unreasonable.") (emphasis added). As this court reads the state of the law, *Gant* authorizes warrantless vehicular searches incident to arrest in two circumstances: (1) "when the arrestee is unsecured and within reaching distance of the passenger compartment at the time of the search"; and (2) "when it is reasonable to believe that evidence related to the crime of arrest is within the vehicle." *Id.* at 343 (internal quotation marks and citations omitted).

Due to the foregoing controlling law, in this case, the court views Deputy Lathen's search as authorized by the second circumstance in *Gant*. Deputy Mora performed standardized field sobriety tests on Mr. Peralta, all of which Mr. Peralta failed. Additionally, Deputy Mora performed a preliminary breath test on Mr. Peralta that showed Mr. Peralta's blood-alcohol content was close to two-and-a-half times the legal limit. This gave Deputy Mora probable cause to arrest Mr. Peralta for driving under the influence. A DUI offense is one where there may be evidence of that offense in the car, such as open containers. *State v. Cantrell*, 233 P.3d 178, 185 (Id. Ct. App. 2010) With this evidence as the basis, the court finds that the government has easily cleared the "low bar" of reasonable belief. *Cf. United States v. Leon*, 80 F.4th 1160, 1170 (10th Cir. 2023) (explaining that reasonable suspicion, an analogous doctrine, is a "low bar"). Put simply, it is a reasonable

inference from the facts above, that open containers might be in Mr. Peralta's car. And indeed, they were.

Defendant's protests to the contrary are unpersuasive. First, Defendant argues that because Mr. Peralta was removed from the scene prior to the search, the search was not contemporaneous with the arrest and the search incident to arrest doctrine cannot apply. As explained previously, this is belied by the plain language of *Gant* which explicitly delineates a second possible justification for searches of automobiles incident to lawful arrest. 556 U.S. at 343, 346-47, 351. Contemporaneousness is only required when the search is justified under *Gant*'s first prong, which fears the arrestee reaching for an object to either destroy evidence or harm police. *Cantrell*, 233 P.3d at 182 ("This exception is separate and distinct from the 'reaching distance' exception announced in *Chimel*."). The "reaching" situation envisioned in *Chimel* is not present in this case.

Defendant's case citations arguing the opposite are of no moment. Defendant claims that Tenth Circuit case law forecloses this court's description of the doctrine, but he is incorrect. First, he cites case law that predates *Gant* and thus does not take account of *Gant*'s seismic reshaping of the search incident to arrest exception. *See* (Doc. 27 at 4, 5; Doc. 35 at 2, 3) (citing *United States v. Lugo*, 978 F.2d 631 (10th Cir. 1992) and *United States v. Edwards*, 632 F.3d 633 (10th Cir. 2001)). Second, the post-*Gant* cases that Defendant does cite, do not address the factual circumstances covered by *Gant*'s second prong. *See* (Doc. 27 at 3, 4, 5; Doc. 35 at 2, 3) (citing *United States v. Knapp*, 917 F.3d 1161 (10th Cir. 2019) (concerned evidence in a purse not evidence in a vehicle), *United States v. Knox*, 883 F.3d 1262 (10th Cir. 2018) (concerned evidence in a home), and *United States v. Polly*, 630 F.3d 991 (10th Cir. 2011) (factual circumstances permitted the court to uphold the search on traditional automobile exception grounds and the court does not address the second prong of *Gant*)).

Moreover, were Defendant correct that temporal proximity is required no matter the search justification, it would render much of the Court's opinion in *Gant* irrelevant. If contemporaneousness and an unsecured arrestee were required, then the Supreme Court's pains to articulate "reasonable belief" was wasted breath. Searches contemporaneous with an unsecured arrestee were already justified under *Chimel*. *Gant*, 556 U.S. at 343. Nonetheless, the Supreme Court undertook the effort to describe the "reasonable belief" standard precisely because some searches incident to arrest are justified even when the arrestee is secured, and the search is therefore not contemporaneous with arrest. *See id.* at 341-44; *see also Thornton*, 541 U.S. at 628 (Scalia, J., concurring in the judgment).

Defendant's second argument resisting the court's conclusion is that even if the search incident to arrest doctrine is applicable, "there was no reason to believe the vehicle contained evidence of the offense of arrest." (Doc. 27 at 6.) As the court has already explained, this is simply not true. Deputies Mora and Lathen uncovered a raft of evidence that Mr. Peralta was driving under the influence. This evidence easily lends itself to a reasonable inference that open containers could be in the car. But still, Defendant points the court toward distinguishable cases that, in his mind, do have facts rising to the level of reasonable belief. (Doc. 35 at 5-6.) He claims these cases, unlike the case at bar, contain "articulable facts about the contents of the vehicle which related to the DUI arrest." (*Id.* at 5.)

But nothing in *Gant* compels the court to look at the evidence in a straitjacket. The cases cited by Defendant merely demonstrate that there is a range of facts that could generate a reasonable belief. Requiring the presence of the facts Defendant highlights from other cases would turn "reasonable belief" into probable cause, which as explained above, would render the second prong of *Gant* duplicative of the automobile exception. The instant case has different facts, but

9

that alone does not take it out of the ambit of *Gant*'s second prong.  *See State v. Ewertz*, 305 P.3d 23, 28 (Kan. Ct. App.) ("The district court found that Officer Tatro had probable cause to arrest Ewertz for driving under the influence based on the smell of alcohol in the car, Ewertz' failure of some of the field sobriety tests, and her glassy and bloodshot eyes. . . . The district court also found that Tatro observed Ewertz swerving before he made the stop and noted her speech was slurred. . . . In addition to evidence that the car Ewertz was driving swerved in its lane and crossed over the fog line, that Tatro smelled alcohol in the car after he pulled Ewertz over, that Ewertz failed field sobriety tests, that Ewertz had glassy and bloodshot eyes, and that Ewertz slurred her words, there is also evidence that Ewertz admitted to drinking at least one alcoholic beverage before driving the car.").

Some courts have even taken the position that it is the offense of arrest alone that generates the reasonable belief necessary to search for evidence within the vehicle.  *See e.g.*, *Brown v. State*, 24 So.3d 671, 679 (Fl. Dist. Ct. App. 2009); *United States v. Page*, 679 F. Supp. 2d 648, 654 (E.D. Va. 2009) ("On closer examination, it would appear that the majority in *Gant* distinguishes between offenses for which it is unlikely that the arrestee's vehicle contains relevant evidence, i.e., traffic violations, and offenses for which the recovery of such evidence is likely.").  This court declines to adopt that approach wholesale, because it may be difficult to determine whether certain offenses belong within the class of offenses where it is foreseeable that evidence is within the vehicle.  *See United States v. Reagan*, 713 F. Supp. 2d 724, 732 (E.D. Tenn. 2010) ("It is relatively easy to decide that certain criminal offenses, like the six minor traffic violations from *Atwater*, *Knowles*, and *Gant*, are offenses for which there is no physical evidence. But it is more difficult to decide whether a criminal offense such as telephone harassment 'by [its] nature ... might yield physical evidence.'") (internal citations and quotation marks omitted).  That said, *Gant* itself and

Justice Scalia's concurrence in *Thornton* plainly envisage that the offense of arrest is at least *relevant* to whether the officer can form reasonable belief that evidence may be within the vehicle. *Gant*, 556 U.S. at 343-44 and *Thornton*, 541 U.S. at 632 (Scalia, J., concurring in the judgment) ("A motorist may be arrested for a wide variety of offenses; in many cases, there is no reasonable basis to believe relevant evidence might be found in the car."). "[T]he offense of arrest will supply a basis for searching the passenger compartment of an arrestee's vehicle and any containers therein." *Gant*, 556 U.S. at 344.

With the foregoing in mind the court holds that the totality of the circumstances supports a finding of reasonable belief. The fact that Mr. Peralta was arrested for driving under the influence, Mr. Classen's report that Mr. Peralta crossed the center line and caused the accident, the odor coming from Mr. Peralta's person, and Mr. Peralta's failure of multiple field sobriety tests and the preliminary breath test is more than enough. Moreover, "the arresting officer's own prior experiences or his or her knowledge of the experience of fellow officers, which can be articulated, of finding open containers or other evidence related to the offense inside the passenger compartment . . . is a solid part of 'reasonable articulable suspicion.' . . . Reasonable suspicion may be derived from an officer's own experience or his or her knowledge of the experience of other officers." *Taylor v. State*, 137 A.3d 1029, 1034 (Md. Ct. App. 2016). This is a case "where police could . . . expect to find evidence in the passenger compartment of [Mr. Peralta's] car." *Gant*, 556 U.S. at 344.

Common sense alone dictates that evidence of a DUI "might" be within the vehicle. Absent some mitigating facts, that is all the Fourth Amendment requires. *Id*. Ergo, Defendant's motion to suppress must be denied.

### III. Conclusion

For the foregoing reasons, Defendant's motion to suppress (Doc. 27), is DENIED.  The court notes that there are only six days remaining for trial under the Speedy Trial Act.  This would not allow the parties much time to prepare for trial, nor would it allow sufficient time to summon a jury.  The court finds it is in the interests of justice to continue the trial on its own motion to allow the parties additional time to prepare and so that a jury may be scheduled in due course.  *See* 18 U.S.C. § 3161(h)(7)(A).  The ends of justice are served by granting this continuance and excluding, for Speedy Trial purposes, the time from the entry of this order to the new trial date of Monday, February 9, 2026.  The case is set for status conference Monday, January 26, 2026, at 9:00 A.M., U.S. Courthouse, Wichita, Kansas, Room 232, and the trial is set to begin on Monday, February 9, 2026, at 9:00 a.m., U.S. Courthouse, Wichita, Kansas, Courtroom 238.

IT IS SO ORDERED.  Dated this 13th day of January, 2025.

s/ John W. Broomes
JOHN W. BROOMES
CHIEF UNITED STATES DISTRICT JUDGE